UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUN 1 7 2004

Michael N. Milby
Clerk of Court

RUBEN DARIO PRADO-RIVERA,          )
                                   )
v.                                 )
                                   )          B-04-098
TOM RIDGE, and MARC MOORE,         )
     U.S. DEPT OF HOMELAND SECURITY, and  )
                                   )
THE UNITED STATES OF AMERICA.      )
_____)

### PETITION FOR WRIT OF HABEAS CORPUS

Ruben Dario Prado-Rivera, by and through the undersigned, files the
instant Petition for Writ of Habeas Corpus, under 28 U.S.C. §2241,
and *INS v. St. Cyr,* 121 S.Ct. 2271 (2001).

### I.   JURISDICTION AND VENUE

1. Petitioner Ruben Dario Prado is under an administratively final
order of removal, (Petitioner's Exhibit A, herein incorporated by
reference), which order places significant restrictions on his
liberty not shared by the populace at large, within the meaning of
*Jones v. Cunningham,* 371 U.S. 236,240 (1963). Additionally, he is,
at the moment of filing the instant action, in the custody of
Respondents, at the Harlingen, Texas office of DHS, where he
voluntarily appeared for the purpose of renewing his I-94. [1]

2. Respondents Moore and Ridge maintain offices, and Petitioner's
removal proceedings were conducted, in Harlingen, Texas.

### II.   THE PARTIES

3. Ruben Prado is a native and citizen of Mexico. He became a
lawful permanent resident on June 21, 1974, and has resided
continuously in this country since then.

---

[1]   Contrary to established custom, Respondents never served a
"bag and baggage," order to report for deportation.

4. Respondent Tom Ridge is the Director of the Department of Homeland Security. Respondent Marc Moore is the Field Office Director of the Department of Homeland Security. Both are sued in their official capacities only.

### III. THE FACTS

5. Ruben Prado has been a lawful permanent resident of the U.S., ("LPR"), since June 21, 1974, at which time he was fourteen years old. His wife, Maria Norma Prado has also been an LPR since she was a toddler. The couple has four USC children, ages 10 to 20. Mr. Prado's parents and siblings are also U.S. citizens or LPRs.

6. On April 29, 2002, Mr. Prado applied for admission as a returning resident at the port of entry, following a brief, casual, and innocent visit to Mexico, lasting less than 24 hours. At that time, he was detained, and placed under removal proceedings, as an "arriving alien" on the basis of a conviction in February 2000, for (simple) possession of one gram, or less, of cocaine, for which offense he was granted rehabilitative treatment, to wit, probation.

7. At his hearing, Mr. Prado denied that he was an "arriving alien," on the grounds that 8 U.S.C. §1102(a)(13)(C) did not, and could not, overrule *Rosenberg v. Fleuti,* 374 U.S. 449 (1963). The Judge overruled this objection. Because he denied being an arriving alien, he also denied that he was inadmissible, under §1182(a)(2)(A)(i)(II). In the alternative, Mr. Prado urged that his conviction was not for an aggravated felony, and filed a fee-paid application for cancellation of removal, pursuant to 8 U.S.C. §1229b(a). However, the Immigration Judge pretermitted his application, on the basis of the Judge's conclusion that his offense was an aggravated felony. A timely appeal was filed.

8. At the time of his plea, Mr. Prado relied on the fact that,

2

either he would not be subject to removal, or he would be eligible for some form of relief from removal.

9. Simple possession of cocaine was not then considered an aggravated felony, so that even if he had been deportable, he would have been eligible for cancellation of removal, under 8 U.S.C. §1229b(a). *See, Matter of L-G-,* 21 I&N Dec. 89 (BIA 1995).

10. On information and belief, Mr. Prado asserts that because of the small quantity of cocaine involved, he was not placed under proceedings at that time. He further asserts that a significant number of long-term LPRs who were otherwise similarly situated, in that during the same general time frame, they pled guilty to offenses involving possession of larger amounts of controlled substances, were timely placed in removal proceedings, and were granted cancellation of removal. *See, e.g.,* Respondent's Exhibit B, incorporated by reference.

11. On December 4, 1997, the Fifth Circuit decided *U.S. v. Hinojosa-Lopez,* 130 F.3d 691 (5th Cir. 1997), holding that for purposes of the Sentencing Guidelines, a state felony for simple drug possession constitutes an "aggravated felony."

12. On December 10, 1999, the BIA reiterated its stance that, notwithstanding *Hinojosa-Lopez,* simple possession of a controlled substance was not an aggravated felony for immigration purposes, regardless of the manner in which it was treated by the state authorities. *Matter of K-V-D-,* 22 I&N Dec. 1163 (BIA 1999).

13. On May 11, 2001, the Fifth Circuit decided *U.S. v. Hernandez-Avalos,* 251 F.3d 505 (5th Cir. 2001), which, in strongly worded *dicta,* disapproved of *Matter of K-V-D-.* And although the pertinent language in *Hernandez-Avalos* was, indeed, *dicta,* the Board has followed this conclusion for cases arising within this judicial

3

Circuit.  On February 8, 2002, in *Gerbier v. Holmes,* 280 F.3d. 297
(3rd Cir. 2002), the Third Circuit joined the Second Circuit, [2] in
holding that a state felony conviction for the offense of simple
possession of a controlled substance is **not** an aggravated felony
for immigration purposes.  On February 14, 2002, the BIA issued
*Matter of Salazar, supra.*  The Board declined therein to follow
*Lujan-Armendariz* outside of the Ninth Circuit, and held that, in
light of *Hernandez-Avalos,* it would not apply *Matter of K-V-D-* in
the Fifth Circuit.

14.  On January 7, 2003, the Immigration Judge ordered Mr. Prado
removed, finding him to be ineligible for any form of relief.  He
timely appealed to the BIA, which, on March 17, 2004, affirmed the
Decision of the Immigration Judge without opinion. (Exhibit A).

15.  Given his lengthy residence in the United States, his strong
family ties, employment history, and otherwise clean record, it is
highly likely that Mr. Prado would have earned cancellation of
removal, had he received the opportunity to apply for said form of
discretionary relief.

## V.   THE CAUSES OF ACTION

Petitioner asserts that the deprivation of liberty complained of
herein violates the laws and Constitution of the United States, as
well as international law and treaty obligations with his native
country of Mexico, which claims are cognizable in habeas corpus
under 28 U.S.C. §2241.

### 1.   STATUTORY CONSTRUCTION
### a.   AGGRAVATED FELONY

Mr. Prado first urges that the Board erred as a matter of law in

---

[2]   *Aguirre v. INS*, 79 F.3d 315 (2d Cir. 1996).

its conclusion that *U.S. v. Avalos-Hernandez, supra,* controls the resolution of the question of whether a rehabilitative disposition constitutes an aggravated felony.  The language therein disapproving of *Matter of K-V-D-* was clearly *dicta,* and the Board should not have applied it to Mr. Prado.  To the contrary, Mr. Prado asserts that the Board correctly decided *Matter of K-V-D-,* and that it erred in not applying said decision herein.

### b.  *MATTER OF ROLDAN, SUPRA.*

Mr. Prado also urges that, as a question of law, *Matter of Roldan,* I.D. No. 3377 (BIA 1999), holding that *Manrique* had been superceded by 8 U.S.C. §1101(a)(48)(A), was incorrectly decided, and that §1101(a)(48)(A) was not intended to, and did not, legislatively overrule *Matter of Manrique, supra.*  *See,* Dissenting Opinion by Board Member Lory Rosenberg, in which Board Members Villageliu, and Espenoza, joined.  (23 I&N Dec. at 237-251).  *See also,* Dissenting Opinion of Board Member Anthony Moscato, in which Board Member Villageliu, joined.  (*Id.,* 23 I&N Dec. at 251-252).

### c.  *FLEUTI*

Mr. Prado further urges that the BIA erred, as a matter of law, in concluding that the *Fleuti* doctrine had been statutorily abrogated.  Prior to the enactment of (former) 8 U.S.C. §1101(a)(13), the courts had been faced with a number of cases where, for various reasons, the courts had concluded that LPRs who had departed from the U.S. were not making "entries" on their return.  In *Rosenberg v. Fleuti,* 374 U.S. 449,455-56 (1963), the Supreme Court summarized some of these cases, including *Delgadillo v. Carmichael*, 332 U.S. 388 (1947), in order to discern Congressional intent in enacting §1101(a)(13) (original footnotes omitted) (current footnote added):

Later the same year this Court, because of a conflict

5

between Di Pasquale [3] and Del Guercio v. Delgadillo, 159
F.2d 130 (C.A.9th Cir. 1947), granted certiorari in the
latter case and reversed a deportation order affecting an
alien who, upon rescue after his intercoastal merchant
ship was torpedoed in the Caribbean during World War II,
had been taken to Cuba to recuperate for a week before
returning to this country. Delgadillo v. Carmichael, 332
U.S. 388, 68 S.Ct. 10, 92 L.Ed. 17.  The Court pointed
out that it was 'the exigencies of war, not his voluntary
act,' id., at 391, 68 S.Ct. at 12, which put the alien on
foreign soil, adding that '(w)e might as well hold that
if he had been kidnapped and taken to Cuba, he made a
statutory 'entry' on his voluntary return.  Respect for
law does not thrive on captious interpretations.'  Ibid.
Since '(t)he stakes are indeed high and momentous for the
alien who has acquired his residence here,' ibid., the
Court held that

> '(w)e will not attribute to Congress a purpose to
> make his right to remain here dependent on
> circumstances so fortuitous and capricious as those
> upon which the Immigration Service has here seized.
> The hazards to which we are now asked to subject
> the alien are too irrational to square with the
> statutory scheme.'  Ibid.

The increased protection of returning resident aliens
which was brought about by the Delgadillo decision, both
in its result and in its express approval of Di Pasquale,
was reflected in at least two subsequent lower-court
decisions prior to the enactment of s 101(a)(13).  In
Yukio Chai v. Bonham, 165 F.2d 207 (C.A.9th Cir. 1947),
the court held that no 'entry' had occurred after a ship
carrying a resident alien back from seasonal cannery work
in Alaska made an unscheduled stop in Vancouver, B.C.,
and in Carmichael v. Delaney, 170 F.2d 239 (C.A.9th Cir.
1948), the court held that a resident alien returning
from wartime service with the United States Maritime
Service during which he had stopped at many foreign ports
made no 'entry' because all of the movements of the ship
to which he had been assigned were pursuant to Navy
orders.

---

[3] *DiPasquale v. Karnuth,* 158 F.2d 878 (2nd Cir. 1947).

It was in light of all of these developments in the case law that § 101(a)(13) was included in the immigration laws with the 1952 revision.  As the House and Senate Committee Reports, the relevant material from which is quoted in the margin, make clear, the major congressional concern in codifying the definition of 'entry' was with 'the status of an alien who has previously entered the United States and resided therein * * *.' This concern was in the direction of ameliorating the harsh results visited upon resident aliens by the rule of United States ex rel. Volpe v. Smith, supra, as is indicated by the recognition that 'the courts have departed from the rigidity of (the earlier) rule,' and the statement that '(t)he bill (gives) due recognition to the judicial precedents.'

From this, it is clear that, much as occurred with *INS v. St. Cyr,* 121 S.Ct. 2271 (2001), while *Fleuti* was ostensibly decided on the basis of statutory construction, the exception which the Court read into the statute was mandated by the need to avoid serious Constitutional problems. And although Congress may repeal or amend the statute, it may not repeal or amend those Constitutional roots. *See also, Dickerson v. U.S.,* 120 S.Ct. 2326 (2000) ("Miranda rule" is constitutionally based, and may not be overruled by Congress).

## 2.  EQUAL PROTECTION
### a.  FEDERAL FIRST OFFENDER ACT

Mr. Prado next asserts that, for the reasons set forth in *Lujan-Armendariz, v. INS,* 222 F.3d 728 (9th Cir. 2000), it violates Equal Protection for a determination of whether a given disposition of criminal charges for simple possession of a controlled substance renders an immigrant subject to deportation to be based solely on whether the immigrant was processed in state, or federal, court.

### b.  DIFFERING RESULTS IN DIFFERENT JURISDICTIONS

Mr. Prado also asserts that, given the national character of immigration law, it violates Equal Protection for the result of his

7

case to depend solely on the federal jurisdiction in which it arose, such that, had he been placed in removal proceedings within the Ninth, rather than the Fifth Circuit, he would not be subject to removal at all, and that, had he been placed in such proceedings in any jurisdiction other than the Fifth, and most particularly, within the Third Circuit, he would have been held to qualify for cancellation of removal, which relief, he urges, he would have earned in the exercise of discretion.

### c.  DIFFERING RESULTS BASED ON TIMING OF THE PROCEEDINGS

Had Mr. Prado's case been heard between March 3, 1999, and May 11, 2001, (after *Matter of Roldan*, and before *Hernandez-Avalos*), he would have been subject to removal but eligible for relief, which he would have most probably earned in the exercise of discretion. It violates Equal Protection for the difference between remaining in the U.S. as a lawful permanent resident, and being removed, and permanently barred from returning lawfully, to be based solely on the timing of the proceedings.  This violation is particularly egregious because it is the very fact that the rehabilitative disposition did not, at that time, render him subject to removal that caused the delay.  Therefore, otherwise similarly situated LPRs who were *not* granted rehabilitative treatment, in the end, more favorable treatment in the immigration context, because they were placed in proceedings at a time when the law still permitted them to be granted cancellation of removal.

### 3.  SUBSTANTIVE DUE PROCESS

As an LPR, Mr. Prado has a fundamental liberty interest in being able to live and work in the United States, and in remaining here with his family. *See, Salazar-Regino,* Dissenting Opinion of Board Member Rosenberg, *supra* at 238. *See also, Landon v. Plasencia,* 459 U.S. 21,34 (1982), citing *Bridges v. Wixon,* 326 U.S.   326 U.S.

8

135,154 (1945); *Moore v. City of East Cleveland*, 431 U.S. 494,499 (1977), and *Stanley v. Illinois*, 405 U.S. 645,651 (1972):

> Plasencia's interest here is, without question, a weighty one. She stands to lose the right "to stay and live and work in this land of freedom," ... Further, she may lose the right to rejoin her immediate family, a right that ranks high among the interests of the individual. ...

*Moore* and *Stanley* are both fundamental rights cases, involving family relationships. *Stanley* struck down a conclusive presumption, similar to that involved herein, and *Moore* simply concluded that the interest advanced by the State was insufficient to justify the particular intrusion into the family unit. As a lawful permanent resident, Mr. Prado enjoys the same Due Process rights, including substantive Due Process rights, to develop and enjoy intimate family relationships in the United States.

Mr. Prado asserts that the combination of provisions enacted by IIRIRA, 8 U.S.C. §1101(a)(48)(A), together with the repeal of §212(c) of the Act, and its replacement with 8 U.S.C. §1229b(a), which contains an absolute prohibition on granting discretionary relief to anyone convicted of an "aggravated felony," and the overly expansive definition of what constitute such "aggravated felonies," constitutes an unconstitutional "conclusive presumption" that all LPRs who have been convicted of any offense in that list are unworthy of being able to stay with their families in the United States, even where the State has deemed it appropriate to grant rehabilitative treatment to a first time offender. Similarly, by failing to permit any showing of countervailing equities, these provisions are unjustifiable, as they are not sufficiently narrowly tailored to meet a compelling state interest.

### 4.  PROCEDURAL DUE PROCESS

Mr. Prado also asserts that the Board's decision deprives him of

Procedural Due Process, as seen by another series of Supreme Court cases, involving "fair notice." To apply *Matter of Roldan* and *U.S. v. Hernandez-Avalos* to Mr. Prado retroactively converts a disposition which, at the time of her plea bargain, carried no immigration consequences at all, into one which requires mandatory deportation. Although not "punishment" for a criminal offense, deportation has long been recognized as a "penalty." *See, Reno v. American-Arab Anti Discrimination Committee,* 525 U.S. 471, 497-98 (1999), Justice Ginsberg, concurring in Part I and the result:

> As this Court has long recognized, "[t]hat deportation is
> a penalty - at times a most serious one - cannot be
> doubted." *Bridges,* 326 U.S., at 154, 65 S.Ct. 1443; see
> also *ibid*. (Deportation places "the liberty of an
> individual ... at stake.... Though deportation is not
> technically a criminal proceeding, it visits a great
> hardship on the individual and deprives him of the right
> to stay and live and work in this land of freedom.")

Deportation then becomes an additional penalty, retroactively attached to the "criminal offense," not by any amendment to the statute, but by virtue of changed administrative and judicial interpretations thereof.

Therefore, §1101(a)(48)(A), as interpreted and applied herein, is unconstitutional in that it retroactively makes qualitative changes in the penalty imposed, in a wholly unexpected manner. *See,* Nancy Morawetz, "Rethinking Retroactive Deportation Laws and the Due Process Clause," NYU Law Rev., Vol 73, No. 1, April 1998. *See also, Arce v. Walker*, 139 F.3d 329,333-34 (2nd Cir. 1998):

> [T]he Due Process Clause protects against restraints or
> conditions of confinement that "exceed[ ] the sentence in
> ... an unexpected manner." *Sandin,* 515 U.S. at 484, 115
> S.Ct. at 2300; *see id.* at 479 n. 4, 115 S.Ct. at 2297 n.
> 4 (observing that proscribed conditions of confinement
> must be "qualitatively different from the punishment

characteristically suffered by a person convicted of crime, and [have] stigmatizing consequences." (citation and internal quotation marks omitted)); *see, e.g., Vitek v. Jones,* 445 U.S. 480, 493, 100 S.Ct. 1254, 1264, 63 L.Ed.2d 552 (1980) (holding that "involuntary commitment to a mental hospital is not within the range of conditions of confinement to which a prison sentence subjects an individual"); *Washington v. Harper,* 494 U.S. 210, 221-22, 110 S.Ct. 1028, 1036-37, 108 L.Ed.2d 178 (1990) (holding that inmate has a liberty interest under the Due Process Clause to refuse the involuntary administration of psychotropic drugs).

These protections exist even though deportation is a civil penalty, rather than criminal punishment, is involved.  As the Supreme Court recently held in *BMW of North America v. Gore*, 517 U.S. 559,574 (1996) (footnote 22 in original):

> Elementary notions of fairness enshrined in this Court's constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty that a State may impose. FN22
>
> FN22. See *Miller v. Florida,* 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987) (*Ex Post Facto* Clause violated by retroactive imposition of revised sentencing guidelines that provided longer sentence for defendant's crime); *Bouie v. City of Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964) (retroactive application of new construction of statute violated due process); *id.,* at 350-355, 84 S.Ct., at 1701-1703 (citing cases); *Lankford v. Idaho,* 500 U.S. 110, 111 S.Ct. 1723, 114 L.Ed.2d 173 (1991) (due process violated because defendant and his counsel did not have adequate notice that judge might impose death sentence).  The strict constitutional safeguards afforded to criminal defendants are not applicable to civil cases, but the basic protection against "judgments without notice" afforded by the Due Process Clause, *Shaffer v. Heitner,* 433 U.S. 186, 217, 97 S.Ct. 2569, 2587, 53 L.Ed.2d 683 (1977) (STEVENS, J., concurring in judgment), is implicated by civil *penalties.*

11

For a lawful permanent resident such as Mr. Prado, there can be no question but that deportation is a "civil penalt[y]" imposed as a result of his criminal conviction for possession of cocaine. It therefore violates Due Process as a retroactive application of new construction of a statute, as in *Bouie v. City of Columbia, supra*, and because it imposes a "civil penalt[y]" without prior notice, as in *Shaffer v. Heitner, supra*. And, as in *BNW of North America v. Gore, supra*, it confounds the "[e]lementary notions of fairness enshrined in this Court's constitutional jurisprudence" which "dictate that a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty that a State may impose." [4]

### 5.  INTERNATIONAL LAW AND TREATY OBLIGATIONS

Finally, Mr. Prado urges that the instant order violates international law, and treaty obligations between the United States and Mexico, his country of origin. *See Beharry v. Reno,* 183 F.Supp.2d 584 (E.D.N.Y. 2002) (Where a statute appears to contradict international law, an appropriate remedy is to construe it so as to resolve the contradiction). [5]

Respectfully Submitted,

Lisa S. Brodyaga, Attorney

---

[4] This is very similar to, and is reinforced by, the "void for vagueness" analysis of *Jordan v. DeGeorge*, 341 U.S. 223,231 (1951) (statute relating to deportation would be tested under "void for vagueness" doctrine, notwithstanding that statute was not criminal statute, in view of grave nature of deportation).

[5] *Beharry* found relief available where an offense was committed before IIRIRA, but the plea occurred after enactment.

17891 Landrum Park Road
San Benito, TX 78586
(956) 421-3226
(956) 421-3423 (fax)
Fed. ID.  1178
Texas Bar 03052800

### VERIFICATION

I, Lisa S. Brodyaga, hereby certify that I am familiar with Petitioner's case and that the facts as stated with respect thereto are true and correct to the best of my knowledge and belief.

_____

### CERTIFICATE OF SERVICE

I, Lisa S. Brodyaga, certify that a courtesy copy of the foregoing, with exhibits, was personally delivered to the office of Steven Schammel, AUSA, at Brownsville, Texas, this 17th day of June, 2004.

_____

13

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

```
RUBEN DARIO PRADO-RIVERA,                   )
                                            )
v.                                          )
                                            )
TOM RIDGE, and MARC MOORE,                  )
      U.S. DEPT OF HOMELAND SECURITY, and   )
                                            )
THE UNITED STATES OF AMERICA.               )
_____     )
```

**EXHIBIT "A" IN SUPPORT OF**

**PETITION FOR WRIT OF HABEAS CORPUS**

**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

_____

*5201 Leesburg Pike, Suite 1300*
*Falls Church, Virginia 22041*

Brodyaga, Lisa S., Esquire
17891 Landrum Park Road,
San Benito, TX 78586-7197

Office of the District Counsel/HL
P.O. Box 1711
Harlingen, TX 78551

**Name: PRADO-RIVERA, RUBEN DARIO**          A34-586-508

Date of this notice: 03/17/2004

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,

Frank Krider
Acting Chief Clerk

Enclosure

Panel Members:
    PAULEY, ROGER



**U.S. Department of Justice**
Executive Office for Immigration Review

Decision of the Board of Immigration Appeals

**Falls Church, Virginia 22041**

========================================================================

File:   A34-586-508 - HARLINGEN                                Date:

In re:  PRADO-RIVERA, RUBEN DARIO

IN REMOVAL PROCEEDINGS                        MAR 1 7 2004

APPEAL

ON BEHALF OF RESPONDENT:  Brodyaga, Lisa S., Esquire

ON BEHALF OF DHS:  Lessa N. Whatmough, Assistant District Counsel


ORDER:

    PER CURIAM.  The Board affirms, without opinion, the results of the decision below.  The decision below is, therefore, the final agency determination.  *See* 8 C.F.R. § 1003.1(e)(4).

FOR THE BOARD

U.S. DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
Harlingen, Texas


File A 34 586 508                              January 7, 2003


In the Matter of


RUBEN DARIO PRADO-RIVERA,        )        IN REMOVAL PROCEEDINGS
                                 )
            Respondent           )


CHARGE:      Removability - Section 212(a)(2)(A)(i)(II) - alien
             who has been convicted of a law relating to a
             controlled substance


APPLICATION: Section 240A(a), Immigration and Nationality Act -
             cancellation of removal


ON BEHALF OF THE RESPONDENT:        ON BEHALF OF THE SERVICE:
Ms. Lisa Brodyaga, Attorney         Mr. Tom Bernstein
17891 Landrum Park Road             Assistant District Counsel
San Benito, Texas 78586             Immigration and
                                       Naturalization Service
                                    P.O. Box 1711
                                    Harlingen, Texas 78551

                ORAL DECISION OF THE IMMIGRATION JUDGE

        The respondent was placed in removal proceedings on May

the 9th, year 2002 with the issuance of a Notice to Appear.  See

Exhibit 1.  Assisted by counsel, the respondent denied that he is

an arriving alien and that he is subject to being removed from

the United States pursuant to Section 212(a)(2)(A)(i)(II).  The

respondent admitted the other allegations of fact, 1 through 4,

in that he is not a citizen or national of the United States, but

a native and citizen of Mexico, who on April the 29th, year 2002

cw

applied for admission at the ~~point~~ Port of entry by presenting his

resident alien card, At which time it was determined by the

Immigration officer that the respondent had been convicted on

February 11th, 2000 in the 103rd District Court in Brownsville,

Texas for the offense of possession of a controlled substance.

Thus, he was placed in these instant proceedings as an arriving

alien and charged with being inadmissible pursuant to Section 212

of the Immigration and Nationality Act.  This the respondent

disputes.  The respondent disputes that he should be deemed an

arriving alien because he has not made a meaningful departure

from the United States and should not have been placed in these

proceedings.  If anything, the proceedings should have been

instituted under Section 237(a).

Nonetheless, under the state of the law at the present,

and in light of the fact that this Court doesn't have any

jurisdiction over the constitutionality of statutes, this Court

is bound by the administrative precedence of the Board of

~~Immigration Appeals (8 C.F.R. 3.1(g)) and the Immigration and~~

Nationality Act and the promulgated regulations thereunder.  The

Court finds that under the state of the present immigration law,

as it has been interpreted administratively, the respondent is an

arriving alien as defined under Section 101(a)(13)(C)(v).

Exhibit 2 establishes that the conviction occurred as alleged in

the Notice to Appear.

Thus, the Court finds that based on the respondent's

cw

admissions and Exhibit 2, and in light of Section
101(a)(13)(C)(v) that the respondent is an arriving alien who is
subject to Section 212(a) of the Immigration and Nationality Act.
The respondent's removability has been established with evidence
that is clear and convincing.

  The respondent has filed an application for
cancellation of removal pursuant to Section 240A(a). In order to
be eligible for such relief, the respondent must demonstrate that
he has been lawfully admitted for permanent residence for not
less than five years, has resided in the United States
continuously for seven years after having been admitted in any
status, and has not been convicted of an aggravated felony.

  Reviewing the application for cancellation of removal,
it shows that the respondent was admitted for permanent residence
on June the 21st, 1974, at which time the respondent was
approximately 14 years old. Presently he is 43 years of age. He
has been a resident of long duration in the United States,
certainly more than the seven-year minimum required under the
Immigration Act for the relief that he seeks. Nonetheless, the
fact that he has been convicted of a controlled substance
violation which, under the Immigration and Nationality Act, is
deemed an aggravated felony, respondent is not statutorily
eligible for cancellation of removal. Whether the respondent is
in removal proceedings as an arriving alien pursuant to Section
212(a) or in removal proceedings pursuant to Section 237(a), the

cw

respondent's conviction for a controlled substance violation is
an aggravated felony.  And whether an arriving alien or not, the
conviction would preclude his eligibility for the relief that is
before the Court.  Thus, it is not necessary to proceed any
further in evaluating the respondent's equities to balance those
equities with the social and humane factors in the case.
Respondent had designated Mexico for removal.

<u>ORDER</u>

IT IS THE ORDER OF THE COURT that the respondent be
denied relief pursuant to Section 240A(a) for the reasons ~~here~~
~~and abovestated~~.  *herein above stated*                    *Da*

IT IS THE ORDER OF THE COURT that the respondent be
removed from the United States to his native country of Mexico.

Dated this 7th day of January year 2003.

DAVID AYALA
Immigration Judge

A 34 586 508                    4                    January 7, 2003

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION


RUBEN DARIO PRADO-RIVERA,                    )
                                             )
v.                                           )
                                             )
TOM RIDGE, and MARC MOORE,                   )
     U.S. DEPT OF HOMELAND SECURITY, and     )
                                             )
THE UNITED STATES OF AMERICA.                )
_____ )


EXHIBIT "B" IN SUPPORT OF

PETITION FOR WRIT OF HABEAS CORPUS




IMMIGRATION COURT
201 E. JACKSON STREET
HARLINGEN, TX  78550

In the Matter of

                            Case No.: A36-754-033

ZAVALA-SERRATOS, JOSE ANGEL
    Respondent                    IN REMOVAL PROCEEDINGS

ORDER OF THE IMMIGRATION JUDGE

This is a summary of the oral decision entered on Mar 26, 2001.
This memorandum is solely for the convenience of the parties. If the
proceedings should be appealed or reopened, the oral decision will become
the official opinion in the case.

[ ] The respondent was ordered removed from the United States to
                                        or in the alternative to
[ ] Respondent's application for voluntary departure was denied and
    respondent was ordered removed to
    alternative to
[ ] Respondent's application for voluntary departure was granted until
        upon posting a bond in the amount of $ _____
    with an alternate order of removal to
[ ] Respondent's application for asylum was ( )granted  ( )denied
    ( )withdrawn.
[ ] Respondent's application for withholding of removal was ( )granted
    ( )denied  ( )withdrawn.
[ ] Respondent's application for cancellation of removal under section
    240A(a) was ( )granted  ( )denied  ( )withdrawn.
[ ] Respondent's application for cancellation of removal was ( ) granted
    under section 240A(b)(1)  ( ) granted under section 240A(b)(2)
    ( ) denied  ( ) withdrawn. If granted, it was ordered that the
    respondent be issued all appropriate documents necessary to give
    effect to this order.
[ ] Respondent's application for a waiver under section _____ of the INA was
    ( )granted  ( )denied  ( )withdrawn or ( )other.
[ ] Respondent's application for adjustment of status under section _____
    of the INA was ( )granted  ( )denied  ( )withdrawn. If granted, it
    was ordered that respondent be issued all appropriate documents necessary
    to give effect to this order.
[ ] Respondent's status was rescinded under section 246.
[ ] Respondent is admitted to the United States as a _____ until _____.
[ ] As a condition of admission, respondent is to post a $ _____ bond.
[ ] Respondent knowingly filed a frivolous asylum application after proper
    notice.
[ ] Respondent was advised of the limitation on discretionary relief for
    failure to appear as ordered in the Immigration Judge's oral decision.
[ ] Proceedings were terminated.
[ ] Other: _____
    Date: Mar 26, 2001
    Appeal: Waived/Reserved    Appeal Due By: Apr 25, 2001

                                  MARGARET BURKHART
                                  Immigration Judge

CIP

000088

RECEIVED
DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR
IMMIGRATION REVIEW
2001 APR -9 P 3 23
BOARD OF
IMMIGRATION APPEALS
OFFICE OF THE CLERK

CAUSE NO. 97-CR-351

FILED
DEC 1 5 1997
DISTRICT CLERK STARR CO. TX
DEPUTY

THE STATE OF TEXAS        *        IN THE DISTRICT COURT

VS.                       *        381ST JUDICIAL DISTRICT

JOSE ANGEL ZAVALA         *        STARR COUNTY, TEXAS

## PROBATION JUDGMENT

BE IT REMEMBERED that on this the _____15_____ day of _____, 19__97___, the above numbered and entitled cause was called for trial, and the State of Texas appeared by her District Attorney, and the Defendant, JOSE ANGEL ZAVALA, appeared in person and by his attorney, JOEL MADRIGAL, and both parties announced ready for trial; and the Defendant and his attorney, in open Court, in person and in writing waived his right to trial by jury, and the District Attorney in writing and in open Court consented and approved the waiver of trial by jury, all of which waivers have been filed with the papers of this cause; and it appearing to the Court that all prerequisites of the law for waiving the right of trial by jury have been performed; therefore, the Court hereby consents and approves the said Defendant's waiver of the right to trial by jury and now enters the same in the minutes of the Court.

WHEREUPON, the Defendant, having been indicted in the above entitled and numbered cause for the felony offense of POSSESSION OF COCAINE, after having , plead guilty to the charge contained in the Indictment. Thereupon, the said Defendant was admonished by the Court of the consequences of said plea, including the maximum and minimum punishments, and the said Defendant persisted in entering said plea; and it plainly appearing to the Court that the Defendant is mentally competent and is uninfluenced in making his plea by any consideration of fear, persuasion, or delusive hope of pardon, parole, or probation prompting him to confess his guilt, the said plea is accepted by the Court and is herenow entered of record upon the minutes of the Court as the plea herein of the said Defendant.

WHEREUPON, the Defendant, having in open Court and in writing, consented to waive the appearance, confrontation, and cross-examination of witnesses and having further consented and agreed to the stipulation of evidence and to the introduction of testimony by affidavits, written statements of witnesses, and any other documentary evidence in support of the accusation against the Defendant and the judgment of the Court, the Court hereby in writing consents and approves such waiver and orders that it be filed with the papers in this cause.

WHEREUPON, the Defendant proceeded to trial before the Court and the State proceeded to introduce evidence into the record of this cause showing the guilt of the Defendant, said evidence being accepted by the Court as the basis for its judgment, and the Court having considered the Indictment, the Defendant's plea thereto, the

evidence submitted, and the argument of counsel thereon, found the Defendant guilty of the felony offense of POSSESSION OF COCAINE, which offense was committed on the 14th day of February, 1997, in Starr County, Texas, and assessed the punishment of confinement in a State jail facility for a term of Two (2) years;

IT IS THEREFORE CONSIDERED, ORDERED AND ADJUDGED by the Court that the Defendant, JOSE ANGEL ZAVALA, is guilty of the felony offense of POSSESSION OF COCAINE, as charged in the Indictment herein, and it is further adjudged by the Court that the Defendant be punished by confinement in a State jail for a term of Two (2) years, and that the State of Texas do have and recover of the said Defendant all costs of the prosecution expanded, for which execution shall issue.

WHEREUPON, the Defendant and his attorney, in open Court and in writing, waived the ten (10) days allowed by law for sentencing and requested the Court to pronounce sentence upon the Defendant at this time, said written waiver being approved by the Court and filed with the papers in this cause.

WHEREUPON, the Defendant having made application in due time and form for probation under the provisions of Article 42.12, Vernon's Texas Code of Criminal Procedure, on his conviction herein, and the Court, after hearing the evidence and argument of counsel on the question of punishment and after due consideration, is of the opinion and so finds, that the Defendant, has never been convicted of a felony in this or any other State, and is otherwise eligible for probation, and is further of the opinion, and so finds, that the ends of justice and the best interest of both the public and the Defendant will be served if the imposition of the sentence in this cause be suspended and the Defendant be placed on probation under the supervision of the Court.

IT IS THEREFORE ORDERED, by the Court that the imposition of the sentence in this cause be and the same is hereby suspended during good behavior of the Defendant, and that the Defendant, JOSE ANGEL ZAVALA, be and he is hereby placed on probation for a term of Five (5) years, beginning on this date under the supervision of the Court and the duly appointed and acting adult probation officer of Starr County, Texas, who is hereby appointed to supervise this probation, subject to the following terms and conditions of probation, viz:

That during the term of the probation, the Defendant, hereinafter referred to as "Probationer", shall:

1. Obey all orders of the Court and all rules and regulations of the Community Supervision and Corrections Department;

2. Commit no offense against the laws of this or any other State or of the United States;

3. Avoid injurious or vicious habits including, but not limited to, the consumption of alcohol in any form, at any time, public fighting, disorderly conduct and the use of illegal or addictive drugs or controlled substances;

4. Avoid places of disreputable or harmful character including, but not limited to, bars, taverns, beer joints, or any premises licensed by the State of Texas for the sale and consumption of alcoholic beverages, places where a criminal act is being committed, and places where dangerous drugs or controlled substances are illegally possessed, sold or used.

5. Avoid persons of disreputable or harmful character including, but not limited to, persons who illegally possess, sell or use controlled substances or dangerous drugs, or persons previously convicted of a felony;

6. Work faithfully at suitable employment in a lawful occupation or, if unemployed, actively seek employment;

7. Support his dependents; if any, and obey any Court orders regarding payment of child support;

8. Report to the probation officer at the Community Supervision and Corrections Department in Starr County, Texas or in any county to which the Defendant's supervision is transferred, between the 1st and 10th day of each month during the probationary period beginning in the month next following the entry of this judgment. If the Defendant is deported and does not re-enter or remain in the United States, he may report by mail;

9. Give the probation officer his current physical and mailing address, place of employment and any other information requested by the probation officer in order to supervise the Probationer;

10. Inform the probation officer, in person or by letter, of any arrest, or change in place of residence, marital status, or employment within five (5) days after such change;

11. Permit the probation officer to visit Probationer at his home, place of employment, or elsewhere at any and all times in order to supervise the probation;

12. Report to the probation officer upon request, the sources, nature and amounts of all income or money received by Probationer, including copies of all W-2 forms and income tax returns;

13. Remain within Starr County, Texas, or any county to which Defendant's supervision has been transferred, unless he shall have first secured the written consent of this Court or the said probation officer for him to leave the said county. This

condition is waived if Defendant is deported and does not re-enter or remain in the United States;

14. Observe a curfew and must be at home before 10:00 p.m. each night, and shall not leave such home or place of residence between 10:00 p.m. and 5:00 a.m. unless he has first obtained permission from this Court or from his probation officer;

15. Submit a copy of his fingerprints to the Sheriff's Department of Starr County, Texas, or the Community Supervision and Corrections Department;

16. Not purchase, possess, use, transport, or carry on or about his person any firearm, illegal weapon, or any knife with a blade longer than 3 1/2 inches.

17. Report to the county jail for N/A consecutive weekends, beginning the N/A and remain there in custody each weekend, from 6:00 p.m. Friday until 6:00 p.m. Sunday;

18. Pay all court costs INSTANTER. The Court orders the Defendant to pay all court costs on or before the _____ day of _____, 19_____.

19. Pay a supervisory probationary fee of $40.00 per month to the probation office, between the 1st and 10th day of each month during the probationary period. This condition is waived if Defendant is deported and does not re-enter or remain in the United States;

20. Make restitution to N/A in the sum of -0-, payable as follows: At the rate of N/A per month commencing on N/A and continuing at the same rate until the full amount is paid;

21. Pay a fine of $900.00, payable as follows: At the rate of $___/5.00___, per month, commencing on ___/2/26/?>___ and continuing at the same rate until the full amount is paid;

22. Reimburse the county for compensation paid to appointed counsel for defending him in this case, in the amount of_____ payable as follows: At the rate of _____ per month commencing on _____ and continuing at the same rate until the full amount is paid;

23. File with the probation officer, at the probation office, between the 1st and 10th day of every month next following a default in any payment required of Probationer by this judgment, a detailed statement, in writing and under oath, of all income and expenses received and expended by the Probationer during the entire month in which the default occurred;

24.  File with the probation officer, at the probation office, between the 1st and 10th day of every month next following a calendar month in which Probationer was gainfully employed less than 150 hours, a detailed statement, in writing and under oath, of all efforts made by Probationer to secure and hold employment during the entire month in which he was not gainfully employed 150 hours;

25.  Submit to testing for control substances (urinalysis) at your own expense as directed by your Community Supervision and Corrections Officer.

26.  Participate in the following community based or rehabilitation program, to-wit:_____.

27.  If the Defendant is to be deported the Defendant shall not be required to report in person. If the Defendant returns to the United States under any circumstances he is ordered to report to the Starr County Probation Department immediately upon his return.

In addition to the above conditions of probation, Defendant is further ordered by the Court to abide by the following special conditions of probation checked below:

_____ 28.  Defendant is assigned to intensive supervision for one (1) year or until the level of supervision is changed by the Court or the probation officer;

XX 29.  Attend counseling sessions for substance abusers in a program approved and licensed by the Texas Commission of Alcohol and Drug Abuse;

_____ 30.  Participate in substance abuse treatment services in a program or facility approved and licensed by the Texas Commission of Alcohol and Drug Abuse;

_____ 31.  Remain under custodial supervision in the following community based facility, to-wit: _____, obeying all rules and regulations of such facility, and paying a percentage of his income to the facility for room and board;

_____ 32.  Participate in a program at the direction of the probation officer that teaches functional illiterate persons to read;

XX 33.  Obtain a General Equivalency Diploma (GED) within one (1) year from the date of this judgment;

XX 34.  Perform 175 hours of community service under the direction of the probation officer. In lieu of such community service, Defendant may make a donation to an approved charity or non-profit organization in

the amount of ~0~.

_XX_ 35.  Make reimbursement to the Texas Department of Public Safety for analysis and storage of controlled substances, in the amount of $140.00.

_XX_ 36.  Make reimbursement to the Starr County Community Supervision and Corrections Department for the Pre-Sentence Investigation Report, in the amount of $50.00.

_____ 37.  Pursuant to Article 42.12 C.C.P., Section 14, the Court finds: (1) this Defendant has been placed on community supervision under this Article; (2) the Defendant is charged with or convicted of a felony other than a felony under Sec. 21.01, 22.011, 22.021 or 25.06 of the Penal Code; and (3) the Court affirmatively finds that (a) drugs or alcohol abuse significantly contributed to the commission of the crime or violation of community supervision and (b) the Defendant is a suitable candidate for treatment, as determined by the suitability criteria established by the Texas Board of Criminal Justice under Section 493.009(b) of the Government Code.

As a condition of community supervision, the Defendant is required to serve a term of confinement and treatment in a substance abuse treatment facility under this section for a term of not less than 6 months or more than 1 year, and upon release the Defendant is required to participate in a drug or alcohol abuse continuum of care.

All payments required of the Probationer by this judgment shall be paid within the times specified, at the probation office to the probation officer, for which Probationer shall receive a receipt evidencing payment.

You are hereby advised that under the laws of this State, the Court shall determine the terms and conditions of your probation, and may at any time during the period of probation alter, or modify, the conditions of your probation. The Court also has the authority at any time during the period of your probation to revoke your probation for violation of any of the conditions set out above.

The District Clerk shall deliver to Probationer a copy of this judgment containing the terms and conditions of probation, and the date of delivery of such Order shall be noted on the Docket Sheet.

SIGNED AND ENTERED this the 15 day of ꟼ蜜ꝛ, 1997.

JOHN A. POPE, IVI
DISTRICT JUDGE
381ST JUDICIAL DISTRICT COURT
STARR COUNTY, TEXAS

I have received a copy of this Order and fully understand each of the terms and conditions imposed.

DATE:_____

JOSE ANGEL ZAVALA
PROBATIONER

A certified copy of the Probation Judgment in this cause was delivered to Probationer on the _____ day of _____ A.D. 19_____.

_____
DISTRICT CLERK

_____                              _____
RIGHT INDEX                                      LEFT INDEX
RIGHT THUMBPRINT                                 LEFT THUMBPRINT

RECORDED IN VOLUME J PAGE: 241-269

DATE 1-26-98
A true copy I certify
JUAN ERASMO SAENZ
District Clerk, Starr County, Texas
By _____ Deputy